UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW U. D. STRAW,     )
    *Plaintiff,*        )
                   )
v.                    )
                   )
U.S. DEPT OF EDUCATION,  )
    *Defendant.*       )
                   )

Case: 1:18–cv–00907   Jury Demand
Assigned To : Unassigned
Assign. Date : 4/16/2018
Description: Pro Se Gen. Civil   F Deck
Hon.
Magistrate Judge

Jury Trial Demanded

## COMPLAINT FOR VIOLATION OF MY RIGHTS UNDER THE FIFTH AMENDMENT AND THE REHABILITATION ACT OF 1973 BY A CONTRACTOR OF THE U.S. DEPARTMENT OF EDUCATION, NAMELY THE AMERICAN BAR ASSOCIATION

Comes *plaintiff* Andrew U. D. Straw, *pro se*, an adjudicated "qualified person with a disability" under the ADA, having been retaliated against for exercising my absolute right to file ADA cases or make ADA complaints, hereby seek justice against the U.S. Department of Education for the injuries to my person by its contractor, the American Bar Association, in its role as regulator of law schools:

### STATEMENT OF CLAIM

1.    The ABA has **terminated my membership** because of the Indiana Supreme Court requesting this.  (Ex. 1).  This cannot be disputed.  This was an **act of retaliation** in coordination with a known and repeat ADA offender who keeps abusing me.

2.    The collusion with the Indiana Supreme Court assists the ABA in its own discrimination, which I have challenged in federal court, and the

1


RECEIVED
Mail Room

APR 1 6 2018

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Department of Education must be accountable for what the ABA does to me because the ABA is hurting me acting in its role as a law school regulatory body, granted these powers by the U.S. Department of Education.

3.     My U.S. Supreme Court petitions against my former employer, the Indiana Supreme Court,[1] explain sufficiently why I strongly, absolutely believe I have been the subject of that state supreme court's disability discrimination for 17 years, and this termination by the ABA is just the tip of the spear.

4.     Termination of my membership by the ABA constitutes **shunning, ostracism, mental abuse, and humiliation**.  It also prevents me from fighting discrimination by participating in the ABA's law reform work. These are very real mental injuries justifying damages, and I feel them acutely.  Exhibits 6, 7.

---

[1] *Andrew U. D. Straw v. Indiana Supreme Court*, 16-1346, ___U.S.___ (petition for writ of certiorari denied); *Andrew U. D. Straw v. Supreme Court of Indiana, et al.*, 17-6812, ___U.S.___ (petition for writ of certiorari denied); *Andrew U. D. Straw v. Supreme Court of Indiana*, 17-8005, ___U.S.___ (petition for writ of certiorari); *Andrew U. D. Straw v. Curtis Hill, Attorney General of Indiana, et al.*, 17-8143, ___U.S.___ (petition for writ of certiorari).  Docket access: www.supremecourt.gov

5.     I have bipolar disorder from being poisoned by the U.S. Marine Corps and my mental disabilities are affective in nature.[2]  I feel that **shunning, ostracism, mental abuse, and humiliation** MORE than non-disabled people do.  I will use a forensic psychologist to demonstrate the damages to the Court.

6.     I have damages.

7.     In 2014, before the ADA Coordinator of the Indiana Supreme Court started attacking me, the ABA featured me as a "spotlight" attorney with disabilities.[3]

8.     Evidence of Indiana's discrimination is in the district court record when I tried to stop the discipline but was denied.  *Straw v. Indiana Supreme Court, et. al.*, 1:16-cv-3483-SEB-TAB (S.D. Ind.) (Dkt. 1-11, 1-13, 1-22)

9.     This Court must understand shunning.  Shunning is the attitude of siding with someone I am suing in federal court for disability discrimination and retaliation, and excluding me on that basis, not associating with me.  That is what the ABA did.

---

[2] *Straw v. United States*, 16-17573-GG (11th Cir.)

[3] https://www.americanbar.org/groups/disabilityrights/initiatives_awards/spotlight/straw_a.html

10.   The ABA knows better than to do this.   It should have left my membership alone.   I have sued the ABA in federal court for its actions and I incorporate all those pleadings in that case by reference.   *Straw v. ABA*, 1:17-cv-5714 (N.D. Ill.).   I also have a complaint before the Chicago Human Relations Commission against the ABA: *Straw v. ABA*, 17-P-25 (Chic. Hum. Rel. Comm.)

11.   The Indiana Supreme Court is my former employer and they keep inflicting injuries on me.   This is not complicated.   They are sadists who keep stretching out their injuries to me, and I will never get my law license back.

12.   Why?   Because I will never agree I did something wrong when another, larger state (Virginia) said I deserved NO DISCIPLINE and met my "clear and convincing" standard to prove that.   (Ex. 3).

13.   And now, I will never have an ABA membership again because Indiana has a noose around my neck.

14.   This is not complicated.

15.   It is retaliation and discrimination, absolutely.

16.   I got tired of the abuses of that Court and made an ADA complaint to it in 2014.   The ADA coordinator attacked me for 4 specific cases.   One

of them was my 2014 *ABA* case to demand that the ABA will force law schools to provide statistics on the number of disabled law students, and I had a right to file that case regardless of the incorrect decision I received. 42 USC 12203; 28 CFR 35.134; http://www.ada.gov/reg2.htm

17.    Harvard Law School Admissions now agrees with me that these statistics are important to gather. (Ex. 2). That Harvard statement is enough evidence to refute the abusive reasoning of the 2015 federal court decision in Chicago I got in *Straw v. American Bar Association Section of Legal Education and Admission to the Bar et al*, 1:14-cv-05194-TMD (N.D. Ill.)

18.    All of my "count cases" were ADA cases or saturated in ADA violations. All were ADA Title II cases in that respect explicitly in federal court. And they were attacked by my former employer's ADA coordinator immediately after I made an ADA complaint that she rejected. But when she made a disciplinary complaint against me, she dishonestly neglected to reveal on the form that she was the ADA coordinator or that she was a staff attorney for the Indiana Supreme Court. That's why none of these critically important facts were mentioned in the suspension ORDER. (Ex. 5)

19.    Further, it is very important to understand that the Indiana
hearing officer was corrupt.   He was trying to get appointed to the
Indiana Supreme Court when he presided over my proceeding.   He
absolutely rejected my due process rights, denying me the ability to make
any defensive pleading to him.  That made me boycott his hearing, which
he held *in-absentia*.  Then, when I sued him for his 6-month late hearing
officer report and the discrimination and falsehoods and omissions, he
was a candidate for U.S. bankruptcy judge and both my trial judge and
the 7th Circuit HIRED HIM during my appeal against him.   This is
explained in *Straw v. U.S. District Court*, 18-1698 (7th Cir.) (Dkt. 4, brief),
which I incorporate by reference.

20.    I had no hearing, but the Indiana Supreme Court suspended me
anyway, and accepted all of the unlawful statements in the hearing
officer report.  4 U.S. District Courts unlawfully and in violation of the
5th Amendment suspended my law licenses.  I am suing all of them and
several of these cases are on petition for certiorari at the U.S. Supreme
Court.

21.    I am suing the Seventh Circuit U.S. Court of Appeals for violating
my 5th Amendment rights by hiring my appellee and then favoring him

in the appeal, inventing nonsense *res judicata* law that protected Ahler even when I have never sued him prior to that case. *Straw v. Indiana Supreme Court, et. al.*, 17-1338 (7th Cir. 7/6/2017).  Ahler was hired 3 weeks before my appeal was dismissed.[4]

22.   **I may not receive retaliation for having filed ADA Title II lawsuits.** The law is crystal clear.  NO RETALIATION.  **NONE.**

23.   The ABA lickety-split imposed injury on me because the Indiana Supreme Court retaliated against multiple Title II lawsuits I filed and my complaint, plus nearly 150 ADA violations I opposed in Streamwood, Illinois.

24.   Then Indiana suspended me for 180 days, and that suspension was the grounds for my ABA termination.  Exhibit 1.  The ABA retaliated against my ADA cases because the suspension was for those cases.

25.   Two dominoes are falling over here.  That's all I am talking about. The first domino was the Indiana Supreme Court retaliating against my ADA work with a suspension (including the 2014-2015 *ABA* case).

---

[4] http://www.ca7.uscourts.gov/news/positions/2017_appt_Judge_Ahler.pdf

26.    The second domino was the ABA listening to that abuser and imposing a sanction of its own: termination of my membership even after the ABA celebrated my disability rights law practice in 2014.

## RETALIATION IS THE CAUSE

27.    My ABA membership was terminated and this fact may not be disputed, and the Indiana Supreme Court demanded it to happen. (Ex.1)

28.    The 7th Circuit is very much aware of how inventive people can be with their retaliation.[5]    The 7th Circuit explained the breadth of retaliation in *Knox* **specifically against the State of Indiana**, and here we go again with another Indiana branch of government violating a person with retaliation.

## THE ABA IS BOTH A PRIVATE AND A PUBLIC ENTITY

29.    The statistics I asked to advance the rights of people with disabilities were the responsibility of the ABA.  **The ABA is not just a membership organization.**  It is false to say so.

---

[5] "[retaliation's] * * * forms are as varied as human imagination will permit." *Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir.)

30.   The ABA is a quasi-governmental body for this purpose with a mandate and **_exclusive power_** from the U.S. Department of Education[6] to regulate both **Title II** and **Title III** entities (public and private law schools, respectively).  No "private entity" describes itself as a **"national agency"** of the Department of Education regulating Title II law schools.

31.   The ABA is at a minimum a contractor for Title II agencies with regulation powers from the federal government because it has the imprimatur of the federal government and is paid by the Title II schools **to regulate them**.

---

[6]

https://www.americanbar.org/content/dam/aba/publications/misc/legal_education/St andards/standardsarchive/2011_2012_standards_and_rules_complete_book.authche ckdam.pdf:

Accrediting Agency for Law  Since 1952, the Council of the Section of Legal Education and Admissions to the Bar ("the Council") of the American Bar Association ("the ABA") has been approved by the United States Department of Education as the recognized **national agency for the accreditation of programs leading to the J.D.**  It is the Council and its Accreditation Committee not the ABA that is so recognized.

**The majority of the highest courts of the states rely upon ABA approval of a law school** to determine whether the jurisdiction's legal education requirement for admission to the bar is satisfied. Whether a jurisdiction requires education at an ABA-approved law school is a decision made by a jurisdiction's bar admission authority and not by the Council or the ABA. The Council and the ABA believe that every candidate for admission to the bar should have graduated from a law school approved by the ABA and that every candidate for admission should be examined by public authority to determine fitness for admission.

32.   The ABA also indisputably created the Model Rules for state supreme courts to use, including Rule 3.1, which was used to inflict suspension on me in Indiana.

33.   I may not have had standing in the ABA case and Judge Durkin may have criticized my lawsuit, but guess what.

34.   Harvard Law School (Ex. 2) and University of Michigan Law School and the University of California at Berkeley Law School all gather the statistical information now and they are waiting for the ABA to start collecting it on Form 509, as I asked the ABA to do *before* and *during* my lawsuit 2014.   Ohio State even appears to collect data on *faculty* disabilities for affirmative action purposes.   The Indiana Supreme Court severely criticized me for asking these same things, and suspended me for it.

35.   Harvard said the issue is an "important topic." **I am vindicated.** If the top law school in the nation agrees with me, it is time for the ABA to start collecting these statistics and state courts to stop interfering with me. It's important.   It's not just Andrew Straw who says so.

36.    The Indiana Supreme Court has absolutely ridiculed my *ABA* lawsuit demand for such statistics, insulting me even though I was the **statistical analyst** for the entire Indiana judicial branch from 2000-2002.

37.    It is important for this Court to keep my abusers in sight.  This is not just about the ABA and the Department of Education.  The ABA's fault comes from colluding with a known ADA violator and injuring me at the request of the violator.

38.    It did so because I complained about the lack of statistics in 2014 and why did I ask for that?  I am disabled.  I need lawyers who know disability.  The LSAC discriminated in law school admissions and settled with the Justice Department in 2014, before my lawsuit.[7]  I had every right to demand these statistics to track the discrimination.

39.    The judge in Chicago who defended the ABA was wrong.

40.    The ABA has a national responsibility to aggressively challenge discrimination.  This comes with the grant of power from the Department of Education.

41.    I should not have had to ask for these statistics, and certainly the ABA should not have told me no.  It should have protected me from

_____

[7] https://www.ada.gov/LSAC.htm

Indiana's attacks. My work is law reform work under Rule 3.1 and Rule 3.1 is the only grounds on which Indiana suspended me. Law reform work is specifically protected under this rule, but the ABA let Indiana do this to me and then terminated my membership.

42. The ABA did this in retaliation for my demand for law school statistics and my using the federal courts to demand disability rights because that's all the Indiana discipline was about.

43. To do so is retaliation for all of the ADA violations that went into the Indiana discipline. These include the **four counts** as well as the **suspension itself**, which happened while my federal ADA lawsuit against that state court was *still open*.

44. The attacks on me are part of that Court's legal defense being put up by attorneys at the Indiana Supreme Court. These are defenses put up by the ADA Coordinator, a staff attorney of the Court, who attacked me after my ADA complaint to her.

45. A retaliation violation does NOT require the ABA to be a public entity. The language of the ADA shows it:

42 U.S.C. § 12203:

(a)Retaliation

**No person shall discriminate** against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual **made a charge**, testified, assisted, or **participated in any manner** in an investigation, **proceeding, or hearing** under this chapter.

(b)Interference, coercion, or intimidation
**It shall be unlawful** to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her **having exercised or enjoyed**, or on account of his or her having **aided or encouraged any other individual** in the exercise or enjoyment of, **any right granted or protected by this chapter**.

## RIGHT TO SUE

46.   There are at least 5 different ADA cases under Title II upon which the Indiana Supreme Court retaliation was based.   Certainly, this includes 3 of the Count cases, the case I filed in 2015, and the case I filed in December 2016, the one specifically opposing the suspension.   In each of those count cases under the ADA, **I had the right to sue**.   This is without regard to the outcome.

47.   42 U.S.C. § 12133 gives me the right to sue if I am "aggrieved." Every time I file a lawsuit, I have documentary evidence and *I am aggrieved*.

48.   28 C.F.R. § 35.134 implements the right not to experience any retaliation when a person files a lawsuit, using similar language:

(a) No **private** or **public** entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual **made a charge**, testified, assisted, or **participated in any manner** in an investigation, **proceeding, or hearing** under the Act or this part.

(b) No **private** or **public** entity shall **coerce, intimidate, threaten, or interfere** with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or                              this                              part.

49.    In case this was not clear enough, the U.S. Department of Justice explains that *it does not matter* what the outcome of the proceeding is. The *right to sue* is sacrosanct and there must be no retaliation. http://www.ada.gov/reg2.htm:

50.    28 C.F.R. § 35.102 states that, "**Except** as provided in 28 C.F.R § 35.134, this part does not apply to private entities."

51.    To say that the regulations governing Title II do not cover any private entities ignores this statement. **All retaliation is covered, including by the ABA.**

52.    The explanation the DOJ gives for 35.134 states as follows:

This section protects not only individuals who allege a violation of the Act or this part, but also any individuals who support or assist them. This section applies to **all investigations or proceedings** initiated under the Act or this part **without regard to the ultimate resolution of the**

14

**underlying                                                    allegations.**

Because **this section prohibits any act of retaliation or coercion in response to an individual's effort to exercise rights** established by the Act and this part (or to support the efforts of another individual), **the section applies not only to public entities** subject to this part, **but also to persons acting in an individual capacity or to private entities**. For example, it would be a violation of the Act and this part for a private individual to ***harass or intimidate*** an individual with a disability in an effort to prevent that individual from attending a concert in a State-owned park.    *  *  *

53.   Private entities may not retaliate against Title II ADA lawsuits.

54.   I wanted law schools to provide the statistics and the ABA regulates ALL of them that are accredited. The ABA has a contract with the federal government to regulate law schools. The ABA gets money from state law schools to regulate them, tens of thousands of dollars each ***annually***.[8]

## RETALIATION, TITLE II GROUNDS

55.   The ABA was fully aware that I have sued it for violation of rights under Title II because of its regulation of Title II entities and my lawsuit sued the ABA and Title II law schools.

56.   This is indisputably Title II based retaliation.

---

[8] https://www.americanbar.org/groups/legal_education/accreditation/schedule-of-law-school-fees.html

57.   If my ABA membership was terminated because of the suspension of the Indiana Supreme Court, that termination was on the same grounds as my suspension.   The suspension ORDER specifically mentions the ABA.   (Ex. 5).

58.   It is preposterous that my Indiana defendants, with my ADA lawsuit still open, would feel entitled to inflict a 180-day suspension on me in **4 ADA cases** when all of the members of that Court, my former employer, were prohibited from hurting me and should have recused—all 5 of them—under the judicial conduct canons, especially Rule 2.11 due to their being **parties to my dispute**.   I complained to them FIRST.   *They retaliated.*

59.   The ABA was fully aware that the Indiana Supreme Court was disciplining me based on that ABA ADA Title II/III case I filed in 2014. It is in the ORDER of suspension.   (Ex. 5).   In fact, the disciplinary complaint specifically mentioned that I was suing law schools because of **the actions of the ABA**.

60.   I sued the ABA earlier about not collecting disability statistics in law school admissions and my demands were to protect both **my own** and

**every other disabled person's interest** in having a more robust and numerous disabled bar in *every state*.

61.     The ABA regulates public law schools in every U.S. state and so is covered by the ADA, Title II compensatory damages when the ABA retaliates against me based on ADA Title cases I filed.

62.     The ABA imposed my termination under its rules.

63.     The ABA rules state that a lawyer will only be terminated if that lawyer's license is suspended for six months or more.

64.     I was suspended in Indiana for **180 days**, which is less than 6 months by a couple of days. Virginia said it was a "drive-by shooting" against me to retaliate and discriminate that way Indiana did. (Ex. 3).

65.     Such a **harsh penalty** must be justified 100% by the facts as applied to the rule, and I simply was not suspended for long enough. To inflict this injury of shunning and ostracism on me, the ABA was required to follow its rules, and **it did not**.

66.     It bent its rules to injure me.

67.     I explained this to the ABA and the ABA continued to insist that <u>I</u> **<u>should be terminated when the Indiana Supreme Court requested it</u>**.

68. This is the ABA retaliating based on the discrimination of a Title II entity that discriminated based on multiple Title II lawsuits and complaints!

69. I have sued the ABA in the past under the ADA, Titles II and III.[9]

70. It seems no good deed goes unpunished. Federal courts have a long history of not enforcing the ADA. ADA Amendments Act of 2008 reversed all of that rubbish, but I keep finding more.

71. Like with the ABA, the Indiana Supreme Court sought my federal bar licenses to be suspended based on the Indiana suspension. The Indiana Supreme Court was successful in getting my licenses suspended in four U.S. district courts: Northern District of Illinois, Northern District of Indiana, and Southern District of Indiana.[10] I am appealing or suing in every case, and several have now reached the U.S. Supreme Court and a search on "Andrew Straw" in the Supreme Court docket will reveal all

---

[9] *Straw v. American Bar Association Section of Legal Education and Admission to the Bar et. al.*, 1:14-cv-05194-TMD (N.D. Ill.)

[10] *In Re Disciplinary Action Andrew U D Straw*, 1:17-mc-00005-TLS (N.D. Ind.); *In Re Andrew U. D. Straw*, 1:17-mc-00013-TWP-DKL (S.D. Ind.); *In the Matter of Andrew Straw, An Attorney*, 17-D-02 (N.D. Ill.) The Western District of Wisconsin suspended me with no due process, no hearing, and did not file my defensive pleadings that I presented, and did not even create a case for me or a case number.

of them, including the actual petitions with my reasons for appeal. I have cases to get my licenses back and other cases for damages under the 5th Amendment due to the utter lack of any hearings to justify taking my licenses. Abusers injure you and they don't want any opportunity to be held accountable. In fact, they get angry when someone stands up for themselves, as I am doing. This is why the chief judge of the 7th Circuit is also on the Judicial Council and hired my appellee, the hearing officer, James R. Ahler, and uses his abuses against me to justify my losing federal law licenses. Hon. Diane Wood has done corruption in defense of Indiana just like the ABA is now doing. It should be no surprise that these people are in Chicago or very close to it.

72.    The Indiana Supreme Court has lost multiple ADA lawsuits and paid hundreds of thousands of dollars in settlement.[11]   The ABA is cooperating with the repeat ADA violator to injure me, a disability rights reformer and leader. I should have won every one of my cases, but in losing, I learned what law reforms need to happen. The complete revamping of the Indiana courts is one area, because they are corrupt.

---

[11] *Perdue v. Individual Members of Indiana State Bd. of Law Examiners*, 266 F.R.D. 215 (S.D. Ind. 2010); *Prakel v. Indiana*, 100 F.Supp.3d 661 (2015)

## DAMAGES AND STANDING

73.   I am seeking Rehabilitation Act compensatory damages from the U.S. Department of Education for what the ABA did to me because the Department gave the ABA authority to regulate law schools and did so in a manner that violated me in my disability rights.  The Department has been wholly negligent and when I complained, did nothing.  Because the Department allowed the ABA to take my membership under such conditions, this is a 5th Amendment due process violation justifying punitive and compensatory damages.  The Department needed to control its contractor.  It should strip the ABA of authority over law schools and any other authority the Department gave the ABA because the ABA is a civil rights violator.  It violated me supporting multiple violations.

74.   The U.S. Supreme Court has laid out the requirements for **standing** in a civil rights act case.  *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205 (1972).  This Civil Rights Act of 1968 case shows that Article III standing can be created through Congress passing a civil rights act that gives a particular group the right to sue, and violation of the terms of the Act is all the injury an "aggrieved party" needs to show.

75.   The *Fiedler* case from Maine showed that *Trafficante*'s 9-0 reasoning applies in the case of the ADA (and the Rehabilitation Act of 1973). *Fiedler v. Ocean Properties Ltd.*, 683 F. Supp. 57 (D. Maine 2010).

76.   The *Trafficante* rule was mentioned positively 20 years later in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

77.   It cannot be disputed that I have standing when the defendant allowed the ABA to terminate my ABA membership at the request of the Indiana Supreme Court in 2017, which punished me for my ADA lawsuit against the ABA.  I have asked the Department to help me and no help came.  By not forcing the ABA to provide due process and protections against disability discrimination, the Department injured me and I have standing for this reason.

78.   It cannot be disputed that the entire disciplinary proceeding was initiated by the ADA Coordinator of the Indiana Supreme Court reacting and retaliating against my ADA Title II complaints days earlier about that state court, her employer.  It cannot be disputed that the suspension was done by my defendants in federal court in retaliation for my suit.

79.   Both the Rehab Act and the 5th Amendment provide jurisdiction and a means to obtain relief.

## COUNT I: REHAB ACT AND 5TH AMENDMENT VIOLATIONS

80.  I had a right to file my several ADA lawsuits and complaints without any retaliation in response.

81.  The ABA retaliated at the request of a repeat ADA violator that has violated me for 17 years: the Indiana Supreme Court.

82.  The Indiana Supreme Court convinced the ABA to terminate my license and this prevented me from participating in law reform on this and other topics at the ABA. In October 2016, my proposal regarding the statistics was taken up and considered by the ABA, and this shows the legitimacy of my request. ABA refused to start gathering the statistics, again. Whether the ABA agrees yet or not, Harvard Law Schools thinks my proposal is important. (Ex. 2).

83.  Damages must include shunning and ostracism, emotional distress, humiliation, damage to my ability to influence disability law reform, and any other damages I may prove at trial. Retaliation is prohibited for the reasons given above and those anti-retaliation legal grounds justify relief.

84.    Cooperation with the Title II Indiana Supreme Court against ADA Title II complaints and lawsuits and against my previous lawsuit against the ABA and public, Title II lawsuits all add up to **Title II retaliation**.

85.    It does not matter if the ABA is public or private when it violates my rights against Title II entities, especially the right to sue regardless of outcome.  It's retaliating against Title II complaints.

86.    **The Department is responsible for its failure to protect me from these violations because it gave power over the legal education establishment and any other powers over the profession of law, such as ethics rules, to the ABA, which injured me with that power and authority.**

## PRAYER FOR RELIEF

87.    The Indiana Supreme Court is a repeat offender of the ADA, Title II, and has lost multiple ADA lawsuits,[12] paying hundreds of thousands of dollars in settlements to people with much lighter violations than I have suffered from this former employer.  I broke both my legs and my pelvis and nose serving this Supreme Court and my reward was to be

---

[12] For instance: *Prakel v. Indiana*, 100 F.Supp.3d 661 (2015); *Perdue v. Individual Members of Indiana State Bd. of Law Examiners*, 266 F.R.D. 215 (S.D. Ind. 2010)

betrayed by its ADA Coordinator in multiple ways.[13]  There is no excuse for what the Indiana Supreme Court did to me.

88.    There is no excuse for the ABA cooperating with such an ADA violator that has retaliated against my lawsuit against the ABA.

89.    **There is no excuse for the defendant Department to have allowed these things when I complained and when the Department had the power to force the ABA not to discriminate, but through its omissions allowed violations of my civil rights and those of many others, disabled law students who need the full support of the Department.**

90.    I seek an injunction under the Rehabilitation Act and the 5th Amendment to direct the Department to strip the ABA of all responsibility for law school regulation since it has done so in a manner that violates disability rights, including **my rights**.  As a preliminary injunction matter, I ask the Court to protect me so that the damage does not increase with any more abuse, in whatever form or source.

91.    The following is the rule for seeking an injunction:[14]

> "To obtain a preliminary injunction, the moving party must show that its case has '**some likelihood of success on the**

---

[13] *Straw v. Indiana Supreme Court*, 1:17-cv-2513-RLY (S.D. Ind.); *Straw v. Indiana Supreme Court, et. al.*, 17-1338 (7th Cir.)

[14] *Straw v. Indiana Supreme Court, et. al.*, 1:16-cv-03483-JMS-TAB (S.D. Ind.), Dkt. 28, pages 2-3.

merits' and that it has '**no adequate remedy at law** and will **suffer irreparable harm** if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)). "If the moving party meets these threshold requirements, the district court 'must consider the **irreparable harm** that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "The district court must also consider the **public interest** in granting or denying an injunction." *Stuller*, 695 F.3d at 678.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006).

92.   If my evidence shows that I have some chance of success on the merits from the Department allowing the retaliatory actions of the defendant (ABA membership terminated), no adequate remedy at law and irreparable harm is likely, my situation satisfies the *Stuller* test.

93.   I believe this to be so because money damages alone will not restore my ABA membership or punish the ABA for its behavior.

94.   The ABA governs law schools and has a special dispensation from the U.S. Department of Education to do that.  The ABA is not merely a private entity and its discrimination has wide impacts over the entire

nation, the entire legal profession and the Department put the ABA in that powerful position without adequate oversight.

95. Balancing **irreparable harm** of each side is easy. My having an ABA membership meant a lot to me because I participated there to increase disability rights. The ABA had *no interest in excluding me* and doing so participated in the discrimination of the Indiana Supreme Court in every area in which that court discriminated against me. There is a strong public interest in preventing the ABA from having this kind of power anymore. An injunction will protect me because the ABA had multiple opportunities to do the right thing but failed. I fear more retaliation.

96. I have demonstrated that my aims are to increase "access and opportunity" for every disabled person in the United States and that is the motto of my political party.[15] Disability Party. That is why I sued the ABA and top law schools to start collecting the disability statistics. Harvard Law School and other law schools already collect this information and told me it is ready to provide it to the ABA if they would start asking for it. The ABA is lagging behind and punishing me in

---

[15] *Straw v. Indiana*, 1:17-cv-1797-WTL-DML (S.D. Ind.). *IFP* was granted in this case in July 2017.

collusion with a repeat ADA violator. *It's not right. It is not right that the Department encourages disability discrimination by allowing the ABA to do these things.*

97. Lawyers with disabilities are as important for the civil rights well-being of all disabled Americans as Thurgood Marshall was for the black civil rights movement. If one of the persons who comes through the system now is a Thurgood Marshall for disability rights and is able because I asked for statistics to be gathered to oppose discrimination, I will feel absolutely elated that I was able to help open that door.

98. Being forced to stop its contractor from abusing me and others and instead to protect me *will not even impose a light burden on the defendant.*

99. Injunction relief is needed and appropriate.

## MONETARY DAMAGES DEMAND

100. I ask for compensation under *Barnes v. Gorman*, 536 U.S. 181 (2002), to pay for the injuries to me from the retaliation and to make me whole under the Rehabilitation Act of 1973. I demand **$1 million** in compensatory damages because I have been seeking a more robust and numerous disabled bar for the benefit of **every disabled person** in all 50

states and **was retaliated against in return**. The injury to me and to every other disabled person from the ABA as a Department contractor or **"national agency,"** as the ABA calls itself, is easily justified by the result in *Barnes v. Gorman*, 536 U.S. 181 (2002), where a disabled man was mistreated by police on **one occasion** and he received $1 million.

101. The ABA damage to me is perpetual in the form of shunning, ostracism, exclusion, mental abuse, humiliation, and being prevented from law reform activities that only the ABA does, such as model ethical rules for state supreme courts to follow and regulation of law schools. Not to mention my being muted on the 3-D ABA discussion list for as long as I can remember, even before my membership was terminated.

102. **The damages from retaliation are severe.** They demonstrate that the ABA has no remorse or any concern for the injury to me and will keep violating the law and injuring me indefinitely, damaging me as a civil rights leader and law reformer, regardless of my rights as a disabled person and lawyer.

103. The ABA, cooperating with **a repeat ADA offender**, is aligning itself with every Title II violator I have ever opposed. I ask a jury to send a

clear message that this will NEVER be tolerated and that my federal rights are secure. The United States must now compensate me.

104. In further support of the compensatory damages, I invoke my Fifth Amendment due process rights, which were violated by the Department not protecting me from its **"national agency"** ABA and that agency's cooperation with an ADA violator to hurt me. Because I complained about this and the Department did nothing to help me whatsoever, **I demand punitive damages under the 5th Amendment in the amount of 4x compensatory damages, or $4 million.** Total damages are for **$5 million.**

105. I ask any other relief, such as a declaratory judgment, that this Court and a jury may deem fitting under the circumstances.

## JURISDICTION AND VENUE

106. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it contains federal questions based on the Rehabilitation Act of 1973 and the 5th Amendment, making this a *Bell v. Hood*, 327 U.S. 678 (1946) matter as well.

107. Venue properly lies in the U.S. District Court for the District of Columbia because this is the location of the Department headquarters

under 28 U.S.C. §1391(b)(2 & 3), as a substantial part of the events giving

rise to this action occurred within this district.

I, *plaintiff* Andrew U. D. Straw, certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the above statements and factual representations are true and correct under penalty of perjury.  Dated: **April 11, 2018**

Respectfully submitted,

s/ ANDREW U. D. STRAW
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333   Fax: (877) 310-9097
andrew@andrewstraw.com


## CERTIFICATE OF SERVICE

I, *plaintiff* Andrew U. D. Straw, certify that I filed the above COMPLAINT and EXHIBITS with the Clerk of this Court via U.S. Mail, postage pre-paid on **April 11, 2018**, and all pleadings upon scanning will be served on all attorneys of record via CM/ECF as well as permanently available through Pacer.gov.

Respectfully submitted,

s/ ANDREW U. D. STRAW           U.S. Dept. of Education
1900 E. Golf Rd., Suite 950A    400 Maryland Ave., SW
Schaumburg, IL 60173            Washington, DC 20202
Telephone: (312) 985-7333
Fax: (877) 310-9097
andrew@andrewstraw.com
*Plaintiff,* Proceeding *Pro Se*